Now call Appeal No. 2007-1291 Shinyei Corp v. United States Good morning, Your Honors. We're ready for your argument. Thank you, Your Honors. May it please the Court, Charles Bayard of Scarsdale, New York, appearing for Shinyei for the second time. Our case concerns commerce errors and customs errors in enforcing certain anti-dumping review results. Consequently, our entries were deemed liquidated in 1998 and then actually liquidated, technically re-liquidated, in 2000 with excessive anti-dumping duty assessments. We are seeking refunds of the excessive anti-dumping duty assessments and other appropriate relief. Could you address the specific reversible error that you think that the trade court judge made? He made so many. Well, take the one that you think is the clearest and the most dispositive of this appeal. Well, the clearest one is his view that a deemed liquidation is intrinsically, inherently conclusive and beyond review. You mean the finality of the D-line? We call it finality. Now, we don't use the word finality in our brief. We carefully distinguish between the word final in the sense of complete, like in final agency action, which is right for review, not beyond review. And final in the sense of conclusive. Our position always from 2003 when we first got into this deemed liquidation issue has been that deemed liquidation is final in the sense of complete, that it completes the duty assessment process by operation of law rather than by actual customs action. But a deemed liquidation is not final in the sense of conclusive so long as there are remedies. You mean under COYO, our new case that is allowing for the possibility of a protest. So that's why you're distinguishing the word final because there still is an available remedy to the importer. It's not conclusive against the importer until the importer has foregone that remedy. What COYO said, and we pointed this out and proved this in our report, what COYO said in its decision is what we had been saying since 2003. The holdings and the rationale that you find in COYO are our arguments, our rationale. We gave them to the COYO panel in an amicus brief. They took it all from our amicus brief, sometimes using the very same language. They took almost nothing from what COYO argued. So COYO actually decides the heart of our case. It's already been decided based on our arguments. And that is that a deemed liquidation is not inherently conclusive. It's constructive agency action. It's subject to judicial review to no less an extent than an actual liquidation. And the government had raised a new assertion during COYO and at the end of our case below that we also addressed in COYO. They argued that a deemed liquidation substantively changes the rate of duty that applies to an entry. And we disproved that in our amicus brief. And according to COYO, agreed with us, and indeed their paragraph about the nature of a deemed liquidation. But that's not really what's at issue today, counsel. So we should probably focus on what's at issue today and your problems with the current CIT opinion. I assume you're going to get to Norsk and his treatment of section 159.9 PFR. So why don't we try and go there? But the key to Judge Tsoukalos' decision is his view that a deemed liquidation, once it's effected, is inherently beyond any review. It's conclusive. That's it. It moots everything. He was wrong. COYO says he's wrong. Well, COYO came after he wrote that. So cut him a little slack. Go ahead and address the important issue. You must please understand that every argument that we presented to COYO, everything that COYO said was presented to Judge Tsoukalos by us in the trial court below. Everything that COYO held, we presented to Judge Tsoukalos. He disagreed with it. We presented the same arguments to this court in COYO. You agreed with it. He had every opportunity to accept what COYO said. Counsel. I'm sorry. So the key is, again, that a deemed liquidation is not inherently conclusive. You bypassed the deemed liquidation issue four years ago when you first decided the first Chinyay appeal. But isn't your argument not so much whether it is or isn't conclusive that it occurred in error? Well, we are challenging the assessment instructions that Commerce issued as erroneous. We are also challenging customs application of other instructions that we believe are correct. Our case, unlike COYO, has both a commerce error aspect and a customs error aspect. Judge Tsoukalos dismissed both sides of that. This is the part that I'm a little confused by, and it seems that we remanded it last time to try to have this sorted out, but it didn't happen. In my understanding, the commerce error that you point to is that the instructions to liquidate at the second review rate either didn't include your client or Nankai or Fugino. It should have included basically your goods. I'm just going to call them yours, even though technically I understand they're not. That is correct. Those two instructions did not correctly reflect the results of the review. So do we have those instructions in the record? Because I couldn't find them as part of this case. Are they not in our appeal? They're in the proprietary record. They weren't essential to the disposition of the summary judgment. Because I thought the error was, Commerce's error, was that either they didn't include Chinyay or these other people who they should have in the instructions to customs following the second review rate or if they did include Chinyay, Customs erroneously didn't implement the liquidation as to Chinyay. So I thought there was a question from a factual standpoint that was what needed to get sorted out below about whose error it was. There were six total. Well, we had been bounced around between Commerce and Customs for eight years before we filed our case. I know there are lots of separate entries. There's a whole list of protests. Commerce kept telling us it's Customs' problem. Go to them. Customs told us it's Commerce' error. Go to them. We went to court because we couldn't get a straight story whose mistake it was. So we put it all before the court, and we said, here's the situation. Our entries should be liquidated under the review results. We didn't have access to the instructions at that time. When we finally got access to them, we saw that two of the instructions clearly were erroneously written so that our entries and our name wasn't covered. Four of the other instructions looked to be okay. So we said that either Commerce had screwed up these instructions or Customs had not correctly executed the instructions that looked to be correct. Commerce' error, Customs' error. Now I understand the errors. So your argument today is that the CIT erred in deeming the liquidation final and not allowing your protest to go forward, but the protest would only cover the 15-14 Customs' error, correct? Is that part of your argument? Right. The protest would only cover that aspect of Customs' error. Judge Sakala's dismissed our Commerce' error claims, too. He dismissed the whole thing. Which you filed under the APA properly, under 1675. Under the APA, 1581I. Four years ago, this court said, we have a viable APA claim. The entries are actually liquidated, and the actual liquidations do not moot that claim. Right, but your time's moving quickly, so let's move forward a little bit to the actual errors in the CIT opinion. So he deemed it final. We came out with Coyote and said, look, it's not final. But then he says also that in addition, NORSC is the posting of the Bulletin Notice, which triggers the limitation period for filing, doesn't apply here because there was no knowledge. That only concerns the Customs' error claims. Right. I'd like to put the Commerce' error claim to bed and then reach the Customs' error claim. Okay. Commerce' error claim is easy. In the wake of Coyote, you have to look at Chignet, the first Chignet decision which said that the actual liquidations don't moot our APA claim. You issued an SKF decision, which you recently made precedential, which teaches that actual liquidations and deemed liquidations have the same effect when it comes to Commerce determinations. And you have Coyote, which says that a deemed liquidation is not unreviewable and is not substantive. You put those three together, and the only conclusion you can come to is that the deemed liquidations do not moot our Commerce' error claims. I submit to you that the government cannot present any law, any extension of law or theory that could convince you otherwise. Now let me get to the Customs' error and the question of the regulations and NORSCA. There are two questions concerning the Customs' error case that I'm afraid you are going to have to address, and I'm going to reach the second one before because of Judge Moore's interest. The second question concerns the regulations, regulations which provide for notice of the deemed liquidation. In our case, we have deemed liquidations that Customs did not recognize and didn't post bulletin notes. This differs from NORSC and it differs from Coyote because in both of those cases, Customs recognized the deemed liquidations and posted bulletin notice. In NORSC, there could have been protests filed, but there weren't. And in Coyote, there were protests filed and those were upheld. In our case, Customs never recognized that the entries were deemed liquidated. They never posted bulletin notice. Two years later, they get a cleanup instruction from Commerce that says liquidate any suspended entries as entered. They then actually liquidated our entries and we protested the actual liquidations. Now, what's the issue here? We have a regulation that says that bulletin notice shall be posted for each entry deemed liquidated. We say that the regulation means that if Customs, for whatever reason, fails to post that bulletin notice of a deemed liquidation, our second protest period, 90 days from the bulletin notice, doesn't begin. And if it doesn't begin, it doesn't end. And since our protest period never ended, those deemed liquidations are not conclusive against us, so when we protested the actual liquidations and those protests were denied and we took them to court, we have a viable case and the deemed liquidations do not throw our case out and they don't supersede the actual liquidations, which we're protesting, by the way, on the merits. What does Judge Sokalis and what does the government say? They say that the regulation is unlawful. How is it unlawful? Because it prolongs the duty assessment process unlawfully. Well, it doesn't concern the duty assessment process. Deemed liquidation ends the duty assessment process. As you said in SKF, it's effective even without bulletin notice. What it does is it concerns the protest period. And what the government says is that when Customs doesn't recognize a deemed liquidation, the second protest period doesn't exist, and therefore the deemed liquidation is conclusive and you lose. We say the regulation is clear, that bulletin notice must be posted for each entry deemed liquidated, not just those entries that Customs chooses to recognize. You're going to have to decide who's reading the regulation correctly. And the first question on the Customs error concerns Cherry Hill. The government says, and Judge Sokalis agrees, that when an entry is deemed liquidated, any subsequent actual liquidation is nullified. Only the deemed liquidation exists. Only the deemed liquidation is effective, and, of course, they say it's conclusive. That result comes from the actual fact pattern in Cherry Hill, where the importer relied on the deemed liquidation to say that the actual liquidation was untimely. And it defended successfully against an additional duty assessment. But before the Court in Cherry Hill got to that point, it discussed another scenario, the scenario in Omni, in Juice Farms, in A.N. Derringer, where you had a liquidation and then a reliquidation and then a protest of the reliquidation on the merits, on its substance. And in that scenario, the Court in Cherry Hill said, if you're going to protest the second liquidation on the merits, you've got to do it by protest and it's effective. That's what we did. That's our scenario. Mr. Bayer, you sought to reserve, I was told, 10 minutes for rebuttal. You're now down to two minutes. Do you want to preserve that or do you want to forfeit rebuttal? No, I'm not going to forfeit rebuttal, Your Honor. I'll reserve the time I have. Very good. Thank you. Sorry to be so long-winded. Ms. McCarthy, good morning. May it please the Court. We respectfully request that this Court remand this matter to the Court of International Trade to consider the intervening precedent of COYO and SKF-USA, which was recently published as a precedential decision by this Court. Although COYO is factually different, as she now concedes, we believe that the Court of International Trade should have the opportunity to consider the reasoning of COYO in the first instance to determine whether, in fact, Shinya has timely protested the deem liquidation. Now, why are you arguing they haven't timely protested? What is your argument that there exists a dispute over whether they've timely protested? Because they did not timely protest the deem liquidation within 90 days of the deem liquidation in 1998. What are they required to do? Protest within 90 days of what? Under the form of the statute that's in effect for purposes of this case, the statute has since been amended to change these requirements, but under the statute that's in effect for purposes of this case, they could have protested within 90 days of the deem liquidation in 1998. What about of the notice? Or within 90 days of a notice. The reason why we want this... But you all didn't post a notice, right? The government did not post a notice. So how are they supposed... What in the world should start the trigger for their clock to file a protest if the trigger is when you act and you don't act? That's precisely why you're asking that the case be remanded back to the trial court to decide for the purposes of unique factual circumstances of this case. There have been notices of the actual liquidation. The notice that there was a timely protest... The government's here arguing that the actual liquidation is irrelevant. Your argument, as I take it, both below to the CIT, when we said that there was an actual liquidation, go evaluate the merits, the CIT judge disregarded that and decided to go the route of your persuasion, which is no, we still have a defense of deemed liquidation. So I don't think it probably behooves the government to argue on appeal today, although you're free to do what you want, of course, that the protest time begins after their notice of an actual liquidation that you're telling us to disregard. No, we're not stating that, Your Honor. We're stating for the purposes of the factual record here. Why are we asking that? Let me back up. The reason why we're not asking the court to affirm the decision below is because the intervening precedent of COIO prevents us from defending the judgment and the reasoning of the trial court below. So what are we to do? We do not think it's erroneous because, in our view, Chenier has yet to establish jurisdiction of the trial court to consider a timely protest of the deemed liquidation, which is the only available remedy. They have yet to establish jurisdiction because customs hasn't fulfilled its obligation of posting the notice. So what are we to do? As a court, would it be a good idea for us to say that I'm sorry, Chenier and other importers, you have no right to protest an injustice that's been done to you because customs hasn't posted. And if customs just sits back and never posts, sorry, you never get to protest. Your Honor, with all respect, what we're suggesting is that there's an intensely factual matter that can be remanded for judges of the cause to decide. It could be, but we could also decide this question right now. And so I'd like to know what it is that you think should be the decision. Should customs be allowed to simply not post and therefore there's never an opportunity for Chenier to protest? Your Honor, Chenier has not raised a claim. That raises the question of what is the outcome of an agency that does not follow its own regulations. There's much precedent in this court that an agency is, of course, obliged to follow its own duly promulgated regulations. However, to the extent that there's sometimes a violation of those regulations, there's also precedent in this court that deals with the following of that. It doesn't necessarily void the agency's subsequent actions. That needs to be an issue that needs to be tried and ventilated. This record on appeal does not allow consideration of that issue. Should we issue a writ of mandamus that orders customs to now post so that the 90-day period starts? Your Honor, we need to start with the statute. 19 U.S.C. 1504A says that notice is not necessary for deemed liquidation. That's in the statute. Customs has promulgated a regulation. We are not suggesting that customs does not have to follow its regulation. For purposes of the record here, this record is not complete on appeal, but it could be amassed below. There could be, Judge DeCaul's could take facts. What's incomplete? That's a good point. What is it that would happen below? Because it seems to me this is just a clear question. Customs didn't do what it needed to do, and therefore the time period never started. So what is it below that could be found in the way of facts or further evidence or discovery or something that is necessary for us to remand this to the CIT? Because, Your Honor, as I mentioned before, Your Honor, there have been notices of actual liquidation. That because of the unique factual circumstances of this case, there are no changed liquidations. It may well be that for purposes of this case, Judge DeCaul's may decide that the notices of the actual liquidation may serve as notices of the deemed liquidation for purposes of this matter, in which case... But wait, didn't Chenier protest the actual liquidation? So even if the notice of the actual liquidation would serve as the trigger for the protest, didn't they actually timely protest? Yes, but that hasn't been resolved by... Yes, so the only thing that you've raised so far for a reason that we need to remand it is because the notices of the actual liquidations could be used to trigger for the deemed, which is a stretch, but even if we went that way, they timely protested, so it just brings it back to us again. There's no reason to send it back. We disagree, Your Honor. That factual determination has not been made. Which factual determination hasn't been made? The factual determination would need to be made whether the facts for purposes of this case, whether the notice may be treated as a notice of the deemed liquidation, a notice of deemed liquidation for purposes of this case, or should... But even if it is, didn't they protest? Yes, that was the one... But see, that's the point. The point you're getting at is you're saying there's possibly an untimely protest, and therefore we need to send it back for factual evaluation. There's a possibility of a timely protest. And the argument you're making is we never posted anything for deemed liquidation, but notice of actual liquidation could suffice, but they did timely protest actual liquidation, so again, it devolves down into there's no facts that are really in dispute. Your Honor, there cannot be a broad principle by which you would treat a notice of actual liquidation as interchangeable notice of deemed liquidation, because, for instance, if it is not a no-change liquidation, they'd be very different liquidations. Just one more question. You agree that there was no notice of the deemed liquidation, correct? We agree that Constable Dredd did not intentionally issue notices of deemed liquidation. That is correct, Your Honor. Okay, so there was no notice of deemed liquidation that would have started the 90-day trigger for protest. And to the extent there was notice of actual liquidation, it was timely protested. Yes, Your Honor. Okay, please continue. But the actual liquidation, which Xinyan entirely ignores, is this Court's binding and controlling precedent in Cherry Hill. The actual liquidation was void. So we're asking for a remand for purposes of the unique factual circumstances of this case for a trial judge to amass records. By the way, this is a consolidated case. This case was consolidated over the vigorous objection of the government. There are A claims interspersed with... 1581A claims interspersed with 1581I claims, which are subject to totally different records, so totally different standards of review. To the extent that there are claims pursuant to 1581A, the trial court is free to amass a factual record on remand and determine whether or not the notices of the actual liquidations may be treated as notices of deemed liquidation for purposes of this case. If that is the case, then in that case, Judge Tsoukalos could rule that it has jurisdiction because there's been a timely protest. On the other hand, if Judge Tsoukalos declines and finds that as a matter of fact that the notices cannot be treated, that there have been no notices of deemed liquidation, then the case is unripe. How is the effect of a notice a matter of fact? But why isn't the effect of any notice or failure of notice necessarily a matter of law that has certain consequences because the law says so? What fact findings would have any relevance to the legal effect of notice or the absence of notice? Because in this case, Your Honor, a notice of deemed liquidation would be essentially the same as a notice of actual liquidation in this case. We believe, although I'm just representing this because it's not in the record, but for appeal, which I stress is incomplete for this Court to make a decision, that we believe evidence would show below, if the case were remanded below, that the only difference between a notice of actual liquidation and a notice of deemed liquidation in this case would be the notation saying, noting in the deemed liquidation notice that it was done by operational law. That would be the only difference. In that situation, Judge Tsoukalos may decide for purposes of this case that there was, in effect, a notice of the deemed liquidation. Therefore, there would be a timely protest. Otherwise, then we have a scenario where the case is unright. And in which case, then the issue may be, well, what's the consequence of customers' failure to comply with its own regulation? None of these issues are before this Court. None of these issues have been fully briefed. None of these issues have even been raised because Shinyeh insists upon protesting a void liquidation and insisting that the court below had jurisdiction to entertain a protest of a void liquidation. And that is entirely foreclosed by this Court's precedent in Cherry Hill. So your position is that there's no way at this stage that Shinyeh can raise the issue that the duty should have been the results of Congress's review rather than the deposit rate? Well, again, in terms of the 1581i issue, well, first of all, if you could establish timely protest, then... Let's assume there's a timely protest. Assume there's a timely protest. In terms of Judge Sokolos' decision, it also needs to be remanded back to Judge Sokolos to decide the status of the i cases. This Court specifically in footnote 5 of its decision in Shinyeh specifically did not reach the effect of deemed liquidation on the viability of an i claim. Judge Sokolos, over the vigorous objection of the government, consolidated the i claims and the a claims and dismissed them. And to the extent that this Court will remand back the case, the case is consolidated against our will. Is that before us? Have you appealed that consolidation? No, we didn't appeal the consolidation. Then why are you arguing it now?  Again, over our objection, we accept the fact that the case was consolidated. That's the procedural status of the case. When he dismissed the a claims, he dismissed the i claims as well. And so to the extent that... Another thing that Judge Sokolos could do in remand is to decide once and for all the status of those i claims, and that could be subject to review by this Court if necessary. But the case... This case is in such a procedural posture that there's really nothing that this Court could do, given the incomplete appellate record, but remand it back to allow Judge Sokolos to decide the very important... Counsel, can I ask you a question? I just want to make sure I understand some of the facts because this is a very complicated case. The entry rate here was at roughly 45% for the goods at issue. And then there was the second administrative review which lowered the rate to between 1.43% and 16.71%. And Commerce issued an instruction to Customs to liquidate, but somehow it didn't include these particular goods. Is that right? Yes. It's an allegation, yes. Okay. And so then... Would you agree that that's an error on the part of them not to have included these Shinye goods in that instruction? Your Honor, I'm not in a position to agree that it's an error because the jurisdiction of the Court hasn't even been established to decide that. What I'm just trying to figure out is why. Why didn't the government fix this? There's an error here. I mean, it might not be for me to say in this opinion. It might be for the CIT to do in the first instance, but the goods came in at 45%. Commerce made an administrative determination that these goods should be between 1.43% and 16.71%. And then they simply mistakenly just didn't apply it to these particular people. Why not go back and fix this stuff? Why keep fighting it all the way up here repeatedly on these procedural issues? The government made a mistake. They owe them some money back. Why not fix it? Well, Your Honor, I think your question raises a larger point, which is precisely why Shinye is incorrect in drawing this distinction about Cherry Hill that customs can reliquidate if it's in favor of the importer's interest, but it can't reliquidate if it's in favor of the government's interest. But that too is the government's error, isn't it? Because there was a team liquidation that the government failed to realize and then they went ahead and actually liquidated. So again, the fact that we're in the procedural posture we're in is also the government's error, not just the misapplication of the rates, but the error that we're in, this whole procedural mess. Your Honor, I'm simply going through the threshold question about whether this actual liquidation is void. If we're going to make a distinction about whether something is void or not as to whether it's in the government's interest or not, that is a highly complicated factual inquiry that I presumably Shinye is suggesting that the trial court would have to make as to whether an actual liquidation is void or not. But the government's interest is generally speaking, which is to have the final administrative review of commerce after all this effort by an administrative agency to actually have that respected. That is generally the government's interest. It's very complex to decide that simply whether the government saves money or not would be consistent with the government's interest. The government has lots of interests. One of them is the vindication of an administrative determination by commerce as the expert agency. So the idea that this would be some sort of dichotomy about whether an actual liquidation is void based upon whether it's in the government's interest makes no sense whatsoever. The fact of the matter is that the actual liquidations in this case are void, and what do we do? And that can only be something that we think the trial judge needs to decide in the first instance by amassing a factual record and ascertaining procedurally whether it has jurisdiction. I'm sorry if I can't provide satisfactory answers to your questions on the merits, but with all respect, we don't think that there's been any showing of jurisdiction yet, which is the plaintiff's burden, to even address those issues. All right, thank you. Mr. Bayar, you have two minutes. Thank you, Your Honor. Just your question, why hasn't commerce, why didn't commerce just fix this thing? They did for everything except the 43 entries in this case. I've been working on this matter for eight years before we filed this litigation. In the first review, in the third review, in the fourth review, and in 60% of the entries in the second review, they implemented the instructions and we got our refunds. It's only these 43 entries in the second review that for some reason that we still do not know, we did not get our refunds, so I don't have an answer for you. But they did it for three other reviews and 60% of this review. The government wants to remand this back to Judge Sakalas. There's no good reason to do so. Well, wait, when you say there's no good reason to do so, clearly we have to remand for a determination of the commerce and customs errors. You didn't even give us the notices, so we don't even know who made an error. That's a remand to reach the merits of the claims. Clearly there has to be a remand. The government wants to do a no-fault remand. Don't find that there's any error and just send it back to him so that he can consider COYO again. Again, he had all of COYO's arguments ahead of him. He rejected them. That's a grounds for reversal, not for a duel. This case, Your Honors, is going to be 8 years old next month. If you send this back to Judge Sakalas, I tell you that you will get back in 2 years. You will be right back here before you with the same decision on the same grounds. How much is at issue in this case? More than $2 million with interest. You wanted to know how Judge Sakalas distinguished Norsk. He distinguished Norsk on the basis that in Norsk customs recognized the deemed liquidations and posted bulletin notice. He will distinguish COYO on the very same grounds. There will be not one change in his decision. The government says that the actual liquidations are void. The whole Xinye decision that was issued 4 years ago was based on the actual liquidations being effective. That's why you didn't reach the deemed liquidations issue. If those deemed liquidations are void, as the government now says, they should have said so 4 years ago and told you to decide the viability of our commerce error claims the first time around based solely on the deemed liquidations. They can't shift gears like that, reverse positions, and tell you to do it all over again. And you want to know, I am sorry. Let me just tell you what's so incomplete below on the facts. The government put in an affidavit from a customs officer swearing on a stack of HTSUSs that the notices of liquidations were strictly for actual liquidations based on the commerce cleanup instructions that customs never, ever recognized or accepted that there was any deemed liquidations here. No way that Judge Sakalas is going to be able to find as a matter of fact that the notices were really for deemed liquidations. The government was in pains to prove that they were actual liquidations. I think we have your case. Since my time has expired. We thank both counsel. We take the case under advisement. Thank you.